UNITED STATES DISTRICT COURT  FILED
FOR THE  IN CLERK'S OFFICE
DISTRICT OF MASSACHUSETTS

2006 APR 11  A 9: 34

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| DAVID A. SHRAIR and ANNE POLEP, Trustees of the Mortimer Polep Irrevocable Trust,<br>      Plaintiffs<br><br>v.<br><br>REASSURE AMERICA LIFE INSURANCE COMPANY,<br>      Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)   CIVIL ACTION NO. 05-30041-MAP<br>)<br>)<br>)<br>)<br>) |

## MOTION FOR SUMMARY JUDGMENT
## OF DEFENDANT REASSURE AMERICA LIFE INSURANCE COMPANY

### [DEFENDANT REQUESTS ORAL ARGUMENT]

.    Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1,
defendant Reassure America Life Insurance Company ("Reassure") moves for the entry of
summary judgment against the plaintiffs David A. Shrair and Anne Polep, Trustees of the
Mortimer Polep Irrevocable Trust ("Plaintiffs"). For the reasons more fully stated in its
Memorandum of Law, Reassure is entitled to summary judgment because there is no genuine
issue of material fact with respect to the determinative issue of whether the life insurance
policy owned by the plaintiffs, which they seek to enforce, lapsed without value due to the
Plaintiffs' failure to pay the premiums required to keep the policy in force.

In support of this motion, Reassure relies on the documentation included in the
Appendix filed herewith, which includes the following:

1.    Plaintiffs' Verified Complaint;

2.    Defendant's Answer;

3.    Deposition testimony of David A. Shrair and Exhibits 1 - 13;

4.    Deposition testimony of Barbara Cowens, Reassure's Vice President of
Administrative Reinsurance and Exhibits 14 - 31;

5.    Deposition testimony of James D. Aronson and Exhibits 1 - 10; and

6.    Deposition testimony of J. Rockwell Allen and Exhibits 1 – 7.

Reassure also relies on its Memorandum of Law which is filed herewith.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

.    Defendant Reassure America Life Insurance Company ("Reassure"), pursuant to Rule

56 of the Federal Rules of Civil Procedure and Local Rule 56.1, submits the following

statement of material facts, with references to the pleadings, deposition testimony and

deposition exhibits, and as to which it contends there is no genuine issue to be tried.

## THE POLICY

1.    On June 17, 1985, Maccabees Mutual Life Insurance Company issued a life

insurance policy number 4040-220 in the amount of One Million ($1,000,000.00) dollars on the

life of Mortimer Polep ("the Policy"). Complaint & Answer - par. 4. A true and complete copy

of the Policy, with a cover letter dated January 28, 2005, is attached as Exhibit 3 and 3A to the

deposition of David Shrair. See, Deposition of David Shrair ("Shrair Dep.") - Exhibits ("Exs.") 3

and 3A. Deposition of Barbara Cowens ("Cowens Dep.") at 15.

2.    As requested in the application for the Policy, the owners and beneficiaries of the

Policy were the Trustees of the Mortimer Polep Irrevocable Trust (hereinafter "the Trust"), and

the type of policy requested was a flexible premium adjustable life insurance policy. Complaint

& Answer - par. 4.

3.    As also requested in the application, all notices on the Policy were sent to

Attorney David A. Shrair, 1380 Main Street, Springfield, Massachusetts 01103. Complaint &

Answer - par. 6; Shrair Dep. – Ex. 3 at 024 - Q. 24.

4.    Maccabees Mutual Life Insurance Company later changed its name to Royal

Maccabees Life Insurance Company. Effective October 1, 1999, Royal Maccabees Life

Insurance Company merged with Reassure America Life Insurance Company and the name of

the insurer of the Policy was changed to Reassure, but otherwise, all of the provisions of the

Policy and all of the rights and obligations under the Policy remained the same. Complaint &

Answer, par. 5. Cowens Dep. at 19, 22-23; Ex. 18.

## FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE

5.      With a flexible premium life insurance policy, all premiums paid on the policy

are deposited into an Accumulation Account, which is referred to in the policy as the

"Accumulation Value." Shrair Dep. – Ex. 3 at 009 – "Accumulation Value."

6.      The policy provides for the payment of an "Initial Premium," which is the

amount due and payable when the policy is first issued. Shrair Dep. – Ex. 3 at 008 –

"Payment."

7.      After payment of the Initial Premium, the policy provides for payment of a

"Planned Periodic Premium," which is defined in the policy as the amount needed to keep the

policy coverage in force. Shrair Dep. – Ex. 3 at 004 – "Planned Periodic Premium Payment."

The policy owner may change the amount and frequency of the Planned Periodic Premium at

any time. Shrair Dep. – Ex. 3 at 004 – "Planned Periodic Premium Payment" and at 008 –

"Payment." Planned Periodic Premiums are payable in advance of the period to which they

apply. Shrair Depo. – Ex. 3 at 008 – "Payment." Reminder notices of Planned Periodic

Premiums are sent to the owner of the policy only upon written request. Shrair Depo. – Ex. 3

at 008 – "Payment."

8.      With a flexible premium payment policy, the cost of insurance, which is

determined on a monthly basis, and the policy expense charges are deducted monthly on the

"Monthly Deduction Day" from the Accumulation Account.  Shrair Dep. – Ex. 3 at 004-

"Monthly Deduction Day" and at 009 -"Cost of Insurance."

9.      If the Accumulation Value, less any indebtedness, on the date immediately

preceding a Monthly Deduction Day is insufficient to cover the Monthly Expense Charge for

the next month, the policy terminates, subject to the Grace Period provision.  Shrair Dep. –

Ex. 3 at 009-"Insufficient Accumulation Value."

10.     If the Accumulation Value, less any indebtedness, on the date immediately

preceding a Monthly Deduction Day is insufficient to cover the Monthly Expense Charge, the

Grace Period provision of the policy allows for a period of 61 days for the payment of a

premium sufficient to cover the Monthly Expense Charge.  Shrair Dep. – Ex. 3 at 008-"Grace

Period."  The provision further provides that written notice of the needed premium will be

mailed at least 30 days prior to the date when coverage ends to the last known address of the

owner of the policy. *Id.*  If the required premium is not paid within the grace period, all

coverage under the policy terminates without value at the end of the 61-day period. *Id.*

### PAYMENTS MADE ON THE POLEP POLICY

11.     The initial premium paid for the Policy, at the time the Policy was issued in 1985,

was $23,213.00. Shrair Dep. – Ex. 3 at 004-"Initial Premium;" Ex. 3A– "Initial Premium."

12.     The planned periodic premium scheduled by the Trust was $23,213.00 and was

to be paid on an annual basis. Shrair Dep. – Ex. 3 at 021-Q. 6a.  The planned periodic

payments in the amount of $23,213.00 were not made as scheduled.

13.     In June, 1993, Mr. Polep requested that all premiums due from 1993 through

1999 be paid from the policy's Accumulation Value. Deposition of Barbara Cowens

("Cowens Dep.") at 33-34; Ex. 15.  When this request was processed into the billing system

in June, 1993, premium payment reminder notices were suspended and no longer sent.
Cowens Dep. at 32, 37-40.

14.     In July, 1998, Royal Maccabees mailed a letter to David Shrair confirming that
the correct address for the Trust was 1380 Main Street, Springfield, Massachusetts 01103.
Cowens Dep. at 44-45; Ex. 16.

15.     As of June 17, 2000, the Accumulation Value of the Policy was $107,260.28.
Cowens Dep. – Ex. 17.

16.     In June, 2002, Mr. Polep contacted Mr. Shrair with a question about how much
he should pay in premium on the Policy.  Shrair Dep. at 27-28.  Mr. Shrair told Mr. Polep that
he really needed to discuss that with the agent who was handling the Policy at that time.  Mr.
Shrair thought Jim Aronson, the son of Hillard Aronson, was that agent. *Id.*

17.     On June 5, 2002, Mr. Shrair wrote to Reassure and instructed them as follows:
"Please take the Twenty-Three Thousand Two Hundred Thirteen ($23,213) dollar premium
which is due from the cash value as a loan."  Shrair Dep. at 30-31; Ex. 4A.  Cowens Dep. at
58; Ex. 20.

18.     On July 30, 2002, Reassure responded to Mr. Shrair's letter by sending a letter to
him at 1380 Main Street, Springfield, Massachusetts, and stated as follows:

> This is a universal life insurance policy and a loan is not necessary to
> pay the premiums.  If regularly scheduled premiums are not received, the policy
> will automatically take the cost of insurance from the accumulated cash value,
> as long as there is sufficient cash value to keep the policy in force,
> The cost of insurance increases each year due to age.  At this time, the
> scheduled premium is not billing for enough money to cover the cost of insurance.
> This scheduled premium will need to be increased if premium payments are to be
> resumed.

Cowens Dep. at 58-59; Ex. 21.

19.     Mr. Shrair recalls getting Reassure's response, which he believed said something

to the effect that it's a universal life policy and no premium needed to be paid for this coverage. Shrair Dep. at 31-32; Ex. 5. At the time, Mr. Shrair did not know that the Policy was a universal life policy, although he did have an understanding of what a universal life was. *Id.* He did not know what the Accumulation Value of the Policy was at that time. *Id.*

20.     From 1993 to 2003, monthly deductions for the cost of insurance and expenses continued to be drawn from the accumulation value of the Policy. Cowens Dep. at 36.

21.     As of July 17, 2003, the Accumulation Value of the Policy was $30,907.04 and the monthly cost of insurance was $2,811.52, with the cost of insurance increasing each month thereafter as Mr. Polep aged. Cowens Dep.– Ex. 31.

22.     On or about June 17, 2004, the monthly deduction day when the Policy's monthly expense charge became due, the Policy's "Accumulation Value" was negative (-229.41). Cowens Dep. – Ex. 31. On or about June 17, 2004, an "Annual Statement" with respect to the Policy was produced by Reassure and mailed to Mr. Shrair at 1380 Main Street, Springfield, Massachusetts in accordance with its usual operating procedures. Cowens Dep. at 98-100; Ex. 31. At the bottom of the Annual Statement was the following notation: "If no further premiums are received, assuming current assumptions, on June 17, 2004 your policy will have insufficient value to remain in force." *Id.*

23.     Also on or about June 17, 2004, a form entitled "Payment Due Notice" was produced by Reassure and mailed to David Shrair at 1380 Main Street in Springfield in accordance with Reassure's usual operating procedures. Cowens Dep. at 99-100; Ex. 26. This notice was mailed to Mr. Shrair in a double window envelope showing Mr. Shrair as the addressee and Reassure as the sender of the notice. Cowens Dep. at 94-95; Ex. 26. This notice was sent in a separate envelope from the Annual Statement. Cowens Dep. at 97. The

notice stated: "Our records indicate that your policy has entered the grace period and is in danger of lapsing. In order to keep your valuable coverage in force, please send a remittance of $6,548.55 within 21 days from the date of this letter." *Id.*

24.    Reassure America thereafter received a check dated July 16, 2004 from Mortimer Polep, within the Policy's grace period, in the amount of $6,548.55 to pay the amount due and to keep the Policy in force through August 17, 2004. Cowens Dep. at 95-96; Ex. 25; Aronson Dep. at 35.

25.    On July 22, 2004, Reassure America received a telephone call from agent Jim Aronson requesting information about the Policy. Cowens Dep. at 116. Aronson Dep. at 50-51; Ex. 7. Mr. Aronson requested three illustrations showing the minimum premium needed to carry the policy to 2005, to 2007 and to 2010. *Id.*

26.    On July 23, 2004, Reassure faxed to Mr. Aronson four illustrations of the Policy's projected values. Aronson Dep. at 44, 48; Exs. 5A-5D. As stated in the illustrations, the minimum premium needed to keep the Policy in force for one year through 2005 would be $71,000.00, Cowens Dep. at 121; the minimum premium needed to keep the Policy in force for a second year would be zero in addition to the $71,000.00; and the minimum needed to keep it in force for the third and subsequent years would be $47,000.00 per year. Aronson Dep. – Exs 5A-5D.

27.    On September 17, 2004 the Policy again entered the policy grace period as the accumulation value of the Policy was not sufficient to pay for the monthly cost of insurance plus expenses. Cowens Dep. – Ex. 30 at 048.

28.    On October 18, 2004, another "Payment Due Notice" was produced by Reassure and mailed to David Shrair at 1380 Main Street in Springfield in accordance with Reassure's

usual operating procedures. Cowens Dep. at 100-101; Ex. 27. This notice was mailed to Mr.
Shrair in a double window envelope showing Mr. Shrair as the addressee and Reassure as the
sender of the notice. Cowens Dep. at 101; Ex. 27. The notice stated: "Our records indicate
that your policy has entered the grace period and is in danger of lapsing. In order to keep
your valuable coverage in force, please send a remittance of $12,660.88 within 21 days from
the date of this letter." *Id.* The remittance of $12,660.88 was needed to pay the amounts due
on the Policy for September through December, 2004. Cowens Dep. at 104.

29.    On November 17, 2004, a form entitled "Notice of Policy Termination" was
produced by Reassure and mailed to David Shrair at 1380 Main Street in Springfield in
accordance with Reassure's usual operating procedures. Cowens Dep. at 107-108; Ex. 28.
The notice stated: "We have not received a response to our previous correspondence
regarding the status of the above stated policy. We regret to advise you that this policy has
terminated due to insufficient cash value to cover the cost of insurance and expenses."
Cowens Dep. – Ex. 28.

30.    On November 29, 2004, Mr. Shrair sent a letter to Reassure, stating that the letter
"is being written to you in connection with your Notice of Policy Termination dated
November 17, 2004." Cowens Dep.– Ex. 29. Shrair Dep. at 39-41; Ex. 4B. In his letter, Mr.
Shrair alleged that he had never received the Payment Due Notice dated October 18, 2004.
*Id.*

31.    On December 30, 2004, Reassure's Assistant Vice President Joan Olson
responded to Mr. Shrair's letter. Cowens Dep. – Ex. 30. The letter was addressed to attorney
Mark Mason of the Cooley, Shrair law firm at Attorney Mason's request. Ms. Olson's letter
advised Attorney Mason concerning the mechanics of how premiums are paid on a flexible

premium adjustable life insurance policy and the specific premium payment history on the

Policy. With respect to the October 18, 2004 notice that Mr. Shrair said he had not received,

Ms. Olson responded that it had been mailed to the Trustees' address of record. A copy of the

October 18, 2004 notice had previously been faxed to Mr. Shrair by Reassure on November

24, 2004. Shrair Dep. at 37-38; Ex. 4O. Reassure's records contained no documentation that

it had been returned by the Postal Service as undelivered. Ms. Olson also advised concerning

the requirements for possible reinstatement of the Policy and enclosed an application for

reinstatement. *Id.*

   32.    In 2005, Reassure received an application for reinstatement of the Policy. On

April 14, 2005, after conducting an underwriting review, Reassure notified Mr. Shrair that the

application was being denied based on medical information obtained from Mr. Polep's

attending physician. Shrair Dep. – Ex. 4H.

**REASSURE'S BUSINESS RECORDS AND PRACTICES**

   33.    Barbara Cowens, a Reassure Vice President with 27 years of experience in

various management positions with the company, testified at deposition concerning Reassure's

regular and customary business practices and procedures with respect to notices and mailings

on Reassure policies during the period on and after September, 1999. Cowens Dep. at 22-23.

As the result of a merger in September, 1999, Reassure became the insurer on all Maccabees'

policies. At the same time, in September, 1999, Reassure assumed responsibility for the

administration of the Maccabees policies, including the Mortimer Polep policy. Cowens Dep.

at 23.

   34.    Reassure's usual and customary business practice is to send all notices and

statements by regular, first class mail to the address of record for each policy. Cowens Dep. at

22-24. Reassure sends several different notices to policyholders, including premium payment

notices, lapse notices (also known as payment due notices) and termination notices. Cowens

Dep. at 23-24. All these forms of notice are programmed into Reassure's computer system and are generated automatically. Cowens Dep. at 27. Individual information about all policies, such as issue date and premium due dates and names and addresses where notices are to be sent, is also programmed into the computer system. Cowens Dep. at 27-29.

35.    When Reassure took over the administration of the former Maccabees policies in September, 1999, all of the policy data from the Maccabees data base, involving some 300,000 policies, was transferred to Reassure's computer system. Cowens Dep. at 29, 38, 73, 87.

36.    With respect to the Mortimer Polep policy, all notices that were generated through the computerized system were sent to David Shrair and Anne Polep, Trustees at 1380 Main Street, Springfield, Massachusetts 01103. Cowens Dep. at 22, 52, 65-66, 73, 95, 97-98, 100, 107, 110; Exs. 26-28. *See also,* Shrair Exs. 4D, 4E, 4F, 4I, 4J, 4K, 4M, 4N, 4O.

37.    The actual performance of administrative services with respect to the Maccabees/Reassure policies is done by a third-party vendor. From 1999 to 2003, these administrative services were performed by a company called Cybertek Corporation. Cowens Dep. at 75-76.

38.    In 2003, Cybertek was acquired by CSC Corporation, which continued performing the same administrative services with the same employees. Cowens Dep. at 76-77.

39.    The Maccabees/Reassure policy data base has been provided to both Cybertek and CSC and is used in the administration of all Reassure policies. Cowens Dep. at 78. Cybertek and CSC provide complete policy administration, including generating and mailing premium due notices, lapse notices and termination notices, collecting policy premiums and paying claims for benefits. Cowens Dep. at 75.

40.    On a monthly basis, Reassure conducts a review process of the services performed by CSC. Cowens Dep. at 78. Included in this review is a determination as to whether notices have been properly transmitted. *Id.*

41.    Reassure has put procedural safeguards in place to insure that notices on policies are properly transmitted. Cowens Dep. at 79.  These safeguards consist of a review process, which Ms. Cowens described as follows:

> Payment notices are generated on the [computer] system, they are received into the accounting area, [where] the count is verified that the number of notices that were supposed to generate actually generated on the system, they are then taken to the mail center, the mail center meters those notices and then they are provided to our pre-sort vendor to mail the notices.

Cowens Dep. at 80.

42.    All of the notices and statements are actually placed in the mail by a pre-sort vendor, National Presort, which carries out this function under the direction of CSC. Cowens Dep. at 80-81.  Reassure has no knowledge of any particularized complaints made relative to National Presort's activities from the time that Reassure took over administration of the Maccabees' policies in September, 1999. *Id.*

## DISCUSSIONS ABOUT THE POLICY – JULY – NOVEMBER, 2004

### JAMES ARONSON

43.    Hillard Aronson of Springfield was the insurance agent who solicited and sold the Policy to Mortimer Polep in 1985. Shrair Dep. at 19, 21.  Hillard Aronson retired in 2002 and moved to Florida.  At that time, Hillard Aronson's file on Mortimer Polep's policy was transferred to his son James Aronson. Aronson Dep. at 19-20.

44.    James Aronson is a self-employed insurance consultant and a certified financial planner. Aronson Dep. at 6-7.  He has been licensed as an agent to sell life insurance and annuities in Massachusetts since 1976. Aronson Dep. at 8-9.  Over the years, he has sold life insurance for some thirty different companies, including MassMutual, Sun Life of Canada, Travelers, Lincoln National, Principal Life and John Hancock.  Aronson Dep. at 11-12.

45.    On July 16, 2004, Mortimer Polep telephoned James Aronson and faxed him a

copy of a "Payment Due Notice" from Reassure America on the Policy dated June 17, 2004.
Aronson Dep. at 32-34; Ex. 2. Mr. Polep wanted to know what he should do about the
notice. *Id.*

46.     Mr. Aronson immediately telephoned Reassure America for information about
the Policy. Aronson Dep. at 34; Ex. 2. He learned that the last premium paid on the Policy
was in 1998 in the amount of $133,014.53, and that no premiums had been paid after that. *Id.*
He also learned that the Policy had a negative cash value of $229.41 and that a check in the
amount of $6,548.55 was needed immediately in order to keep the policy in force for three
months. He also learned that around August 17th, premiums in the amount of $3,159.57 per
month would be needed to keep the Policy in force. Aronson Dep. at 34-35; Ex. 2.

47.     Mr. Aronson then called Mr. Polep back and conveyed to him the information
that he had obtained from Reassure. He told Mr. Polep that he had to send a check in the
amount of $6,548.55 right away by overnight mail to Reassure or else the Policy was not
going to continue in force. Aronson Dep. at 37-38.

48.     Mr. Polep did as Mr. Aronson instructed and sent the premium check to Reassure
by overnite mail on July 16, 2004. On the same day, he faxed a copy of the check to Mr.
Aronson. Aronson Dep. at 40-41; Ex. 3.

49.     In his call back to Mr. Polep on July 16, Mr. Aronson volunteered to prepare a
study of Mr. Polep's Reassure policy and outline what he could do with the policy and how
he could pay future premiums on the policy. Aronson Dep. at 41-42.

50.     In order to prepare this study, Mr. Aronson first made contact with Mr. Shrair
and advised him that he was putting together this study and that it was important for the
trustees and Mr. Polep to decide how they were going to pay for the policy. Aronson Dep. at

43. Shrair Dep. at 69-70.

51.     On July 21, 2004, Mr. Aronson contacted Reassure and obtained information about the Policy, which he reduced to writing. Aronson Dep. at 44-45; Ex. 6. He learned that the premiums paid on the Policy from inception totaled $192,252.55; that the accumulation cash value as of July 21, 2004 was $3,152.77; that the street address of record on the Policy was 1380 Main Street in Springfield, Massachusetts; and that the monthly cost of insurance and expense charge for the insurance for the next 12 months would be $3,168.00. Aronson Dep. at 45-47; Ex. 6.

52.     On July 23, 2004, Mr. Aronson received from Reassure, pursuant to his request, four illustrations showing the premiums needed to maintain the Policy in force over the next two to five years. Aronson Dep. at 48-58; Exs. 5A-5D.

53.     On July 24, 2004, Mr. Aronson mailed a letter to David Shrair concerning his study of the Policy and sent a copy of the letter to Mr. Polep. Aronson Dep. at 42-43, 58-59; Ex. 4.

54.     In his letter, Mr. Aronson advised Mr. Shrair and Mr. Polep of the following: "Mort made a lump sum premium payment several years ago and in June 2004 all premiums and cash values were used up to pay for coverage charges over the past years. Reassure America requested by letter a minimum payment of $6,548.22 to cover a few months of coverage charges. This year's monthly charge is $3,168 and another premium payment will be needed in August." Aronson Dep. - Ex. 4.

55.     The letter went on to illustrate several available options with respect to the payment of future premiums on the Policy, which would average between $40,000.00 and $67,000.00 annually, depending on how many years of coverage was purchased. Aronson

Dep. - Ex. 4.

56.    Prior to sending the letter, Mr. Aronson telephoned Mr. Shrair and advised him that he would be sending him a letter with information about the Policy. Aronson Dep. at 58-59.

57.    Mr. Aronson did not hear back from Mr. Shrair. So in August, 2004, and prior to August 26, 2004, Mr. Aronson called Mr. Shrair and spoke with his assistant and inquired about the letter and whether they had decided what they were going to do about the payment of premiums on the Policy. Aronson Dep. at 59. The response from Mr. Shrair was that they were speaking with Jeff Polep, Mr. Polep's son, but they had not yet decided what they were going to do. *Id.* Mr. Aronson also inquired whether there was anything that he could do to help or if they needed any further explanation of anything, but Mr. Shrair declined any further help. Aronson Dep. at 61.

58.    On August 26, 2004, Mr. Shrair sent an unsigned letter to Mortimer Polep and enclosed a copy of Mr. Aronson's July 24, 2004 letter. Aronson Dep. - Ex. 8. A copy of the letter was transmitted by e-mail to Mr. Aronson. In the letter, Mr. Shrair suggested to Mr. Polep that the premium payment option that seemed to make the most sense was to pay premiums for five or six years. *Id.* Mr. Shrair closed the letter by asking Mr. Polep to let him know what he wanted to do on this. *Id.*

59.    Mr. Aronson did not hear anything further from anyone about the Policy until the first week of November, 2004 when Laurie Polep, Mortimer Polep's daughter, called him and said that the Policy had lapsed for non-payment of premium. Aronson Dep. at 62-64. Mr. Aronson asked her whether a premium had been sent to Reassure and her response was "No, a premium had not been paid." Aronson Dep. at 63.

60.    After November, 2004, Mr. Aronson had no further contact with either Mr. Shrair or Mr. Polep about the Policy.  Aronson  Dep. at 65-66.

### J. ROCKWELL ALLEN

61.    In mid-September, 2004, J. Rockwell Allen was introduced to Mortimer Polep by Jeffrey Polep. Allen Dep. at 20.  Jeffrey Polep asked Mr. Allen to review his parents' investments and to assist them in generating sufficient income to meet their living expenses. Allen Dep. at 22, 24.

62.    As of September, 2004, J. Rockwell Allen had over 30 years experience selling life insurance and annuities, and including universal life insurance. Aronson Dep. at 10, 13, 15, 16, 18-19.  In 1977 he obtained the Chartered Life Underwriter (CLU) designation from The American College in Brandamore, Pennsylvania, and in 1985 he obtained the Chartered Financial Consultant (ChFC) designation from The American College.  Allen Dep. at 8-9. The CLU designation is awarded after taking courses and an examination and is designed to provide training and background in estate planning, insurance and business planning. Allen Dep. at 9-10.

63.    At the time Mr. Allen met with Mr. Polep in September, 2004, Mr. Allen's occupation was that of a financial planner or financial advisor. Allen Dep. at 7. Approximately one-third of his income at the time came from the sale of life insurance or insurance-related products. Allen Dep. at 14-15.  During the thirty years that he has been in the life insurance business, he has sold life insurance policies for Prudential, Lincoln Life, First Colony Life, Banner Life and numerous other companies. Allen Dep. at 12-13.

64.    After an initial meeting in mid-September, 2004, a second meeting was held on September 21, 2004, at which there was a discussion about Mr. Polep's life insurance. Allen

Dep. at 20, 24-25. Present at this meeting were Mr. and Mrs. Polep, Jeffrey and Laurie Polep and Mr. Allen. Allen Dep. at 27-28.

65.     During this second meeting, Mr. Allen received information about all of Mr. Polep's life insurance coverage, including the $1 million policy at issue. Allen Dep. at 30-31.

66.     During this meeting, Mr. Polep provided Mr. Allen with a letter from David Shrair to Mortimer Polep dated August 5, 2004. Allen Dep. at 31-32, 33-34; Ex. 3. Attached to this letter was the first page of James Aronson's letter to Mr. Shrair dated July 24, 2004, but the second page of the letter was missing. *Id.*

67.     Mr. Allen discussed with the Poleps the level of premium that would be needed to keep the policy in force. Allen Dep. at 35-36. Despite having only received the first page of James Aronson's letter dated July 24, 2004, Mr. Allen never contacted Mr. Aronson to discuss the premiums that would be needed, or the time frame in which such premiums would be needed. Allen Dep. at 36.

68.     At this meeting, Mr. Allen obtained an authorization form signed by all of the Poleps, which permitted him to obtain information about the Policy from Reassure. Allen Dep. at 27; Ex. 2. It was Mr. Allen's mistaken understanding at the time that David Shrair and Kenneth Abrahams were Trustees on the Policy and that both of their signatures would be needed on the authorization form as well. Allen Dep. at 36-37.

69.     After receiving the authorization form on September 21, 2004, Mr. Allen first obtained Kenneth Abrahams' signature. However, he didn't fax the form to Mr. Shrair for his signature until November 22, 2004. Allen Dep. at 37-38; Ex. 4. According to Mr. Allen, the two-month delay in getting the authorization signed by Mr. Shrair was due to the fact that Mr. Abrahams was on vacation. Allen Dep. at 39-40, 43-45.

70.    In his facsimile cover sheet to Mr. Shrair, Mr. Allen stated: "The Trust owns a policy on Mort's life for $1,000,000, which seems to be significantly underfunded and may lapse. I'm requesting an illustration from the carrier to determine the premium that may be required." Allen Dep. at 50-51; Ex. 4. Mr. Allen reached his conclusions that the Policy was significantly underfunded and was in danger of lapsing on September 21, 2004 when he received Mr. Aronson's letter dated July 24, 2004. Allen Dep. at 51-52; Ex. 3.

71.    After the meeting of September 21, 2004 and prior to November 22, 2004, Mr. Allen did nothing to obtain information about the Policy, or the premium-paying status of the Policy, from any source. Allen Dep. at 47-48. He never spoke with James Aronson about the Policy, Allen Dep. at 36, nor did he talk with Mr. Shrair. Allen Dep. at 61-62. However, he assumed, based on Mr. Aronson's letter dated July 24, 2004, "that a premium of some amount had to be paid, but I was not aware of the due date or the timing of that premium." Allen Dep. at 48. But he did not inquire of anyone as to the timing or the amount of the premium, even though he realized that it was important to obtain this information. Allen Dep. at 48.

72.    On November 23, 2004, Mr. Allen sent a letter to Reassure with the signed authorization and asked for illustrations showing the minimum premiums required to keep the Policy in force for 5 years and for 10 years. Allen Dep. at 47; Ex. 5. He also asked for the monthly mortality cost for the next 12 months. *Id.*

73.    On November 30, 2004, Reassure responded to Mr. Allen by facsimile and advised: "Our records show that this policy has lapsed effective 11-17-2004." Allen Dep. at 49-50; Ex. 6.

Respectfully submitted,

REASSURE AMERICA LIFE
INSURANCE COMPANY

By its attorneys,

Edward S. Rooney, Jr.
BBO No. 426840
ECKERT SEAMANS CHERIN
& MELLOTT, LLC
One International Place, 18th Floor
Boston, MA 02110
(617) 342-6800

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by over night mail, postage prepaid, this 10th day of April, 2006.

Edward S. Rooney, Jr.