UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| DAVID A. SHRAIR and ANNE POLEP, Trustees of the Mortimer Polep Irrevocable Trust, Plaintiffs | ) ) ) ) ) ) | |
| v. | ) ) | CIVIL ACTION NO. 05-30041-MAP |
| REASSURE AMERICA LIFE INSURANCE COMPANY, Defendant | ) ) ) ) ) | |

## DEFENDANT REASSURE AMERICA LIFE INSURANCE COMPANY'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Reassure America Life Insurance Company ("Reassure") submits this memorandum in reply to the arguments raised by plaintiffs David Shrair and Anne Polep, Trustees of the Mortimer Polep Irrevocable Trust, in their Memorandum in Opposition to Defendant's Motion for Summary Judgment.

**1.  Plaintiffs' Alleged Non-Receipt of Notices Does Not Create an Issue of Fact.**

At pages 6 – 8 of their Opposition Memorandum, plaintiffs set forth several cases on the so-called "mailbox rule," which basically is a presumption that a properly mailed letter will be presumed to have been received by the addressee of the letter. However, this is a presumption about "receipt," but receipt by the plaintiffs is not the relevant issue. In fact, under Massachusetts law, where the parties contemplate *notice by mail*, receipt of the mailed notice by the insured is irrelevant and immaterial to the insured's obligation to take action with respect to the notice that has been mailed. The following two Massachusetts cases, both of which were decided in the 1800's but have

not been overruled, are directly in point. In *Commonwealth Mut. Fire Ins. Co. v. Wood,* 171 Mass. 484, 51 N. E. 19 (1898), the plaintiff insurance company sent a certain notice of assessment by mail addressed to the defendant at his address of record, but the defendant claimed that he had not received it as he had moved to a new residence. On this point, the SJC said simply, but directly, "We are of the opinion that the fact that the defendant did not receive notice affords him no ground of defence." *Id.* at 486.

Similarly, and even more directly in point to the present case, is *Lothrop v. Greenfield Stock & Mut. Fire Ins. Co.*, 84 Mass. 82, 1861 Mass. LEXIS 234 (1861), where the issue was squarely raised as to whether the plaintiff had to actually *receive* a premium notice before the insurance company could declare a forfeiture of the policy when the premium was not paid. Plaintiff's house was destroyed by fire, but the policy issued by defendant to cover the loss had lapsed prior to the fire when plaintiff failed to pay the required premium. Plaintiff contended that he never received the notice that the company was required to send "by mail or otherwise" under the terms of the policy, and this excused his failure to pay the premium. The court rejected this contention and affirmed a judgment for the company. The court analyzed the situation as follows:

> By the stipulation [in the policy] to pay [the premium] on a demand made by mail, the assured agreed to accept the risks which that method of giving notice necessarily involved. The duty of the corporation was performed by placing a notice in the post-office, duly directed to the assured. This was all that could be done by them in fulfilling their part of the stipulation. They could not follow the letter to its destination, nor prove that it was actually received by the assured. A request by mail is a familiar phrase, and has a well understood meaning. It does not import the person to whom it is addressed shall receive it, but only that the person by whom it is to be made shall deposit in the post-office a written request, duly directed, so that in the usual course of mail, it will reach its destination.

*Id.* at 84-85. The court went on to analogize the premium notice situation to remitting monies by mail in payment of a debt where the rule is that payment of a debt is

{K0325158.1}                                    2

established by proof of a remittance by mail, regardless of whether it is received by the creditor. By making payment in the agreed-upon manner, the debtor has done all that was in his power to perform the contract, and the risk of transmission was assumed by the creditor. The court saw no distinction with respect to a premium notice, stating:

> The defendants, whose duty it was to make the request [to pay the premium], transmitted it in the manner stipulated by the contract. They could do nothing further. They did not agree that the plaintiff should receive their letter. Nor was it the agreement of the parties that the request, to be binding on the plaintiff, should be received by him. The contingency of the failure of the notice to reach him through the mail was not provided for by the contract, and cannot therefore be set up as forming a valid ground on which to defeat its express stipulations.

*Id.* at 85-86. *See also, Vinnie's Wholesale Fish Market, Inc. v. Canadian Marine Underwriters Ltd.*, 441 F. Supp. 341 (D. Mass. 1977) (Policy provided: "Written notice mailed to the assured at his or their last known address shall constitute a complete notice of cancellation and this policy shall be null and void at noon on the fifth day after such notice shall have mailed;" policy cancellation effective on fifth day after mailing, not on seventh day when notice was received.).

Thus, the relevant issue is not whether the plaintiffs received the notice, but simply whether the notice was mailed. This is all that the "Grace Period" provision of the policy requires. Shrair Dep. – Ex. 3, p. 008 ("Written notice of such premium will be *mailed...*" (emphasis added). Consequently, Mr. Shrair's contention that he did not receive the notice does not create a genuine issue of *material* fact in dispute. This contention is obviously probative on the issue of receipt, but is not probative on the issue of mailing. The presumption that a properly addressed letter will reach the addressee does not work in reverse so as to create a counter-presumption that the letter was never mailed. *Continental Casualty Co. v. American Color, Inc.*, 817 F. 2d 1287, 1289-90 (7th Cir. 1987).

On page 8 of their memorandum, plaintiffs make the following argument: "The Kansas and Georgia cases Defendant relies upon are not persuasive whereas Kansas

{K0325158.1}                                3

and Georgia state laws are in stark contrast to the law of Massachusetts ... In Kansas and Georgia, the court only looks to whether the sender mailed the notice." As the *Wood* and *Lothrop* cases make abundantly clear, these statements are not correct. The recent Kansas and Georgia cases are fully in accord with Massachusetts case law that has been in force, and not overruled, for well over one hundred years. Moreover, these ancient Massachusetts cases are in accord with the great weight of authority throughout the country. *See, e.g., Continental Casualty Co. v. American Color, Inc.*, 817 F. 2d 1287, 1290 (7th Cir. 1987) ("[P]rovisions for cancellation by mailing (rather than by receipt) are common in insurance contracts."). *Wright v. Grain Dealers Nat. Mut. Fire Ins. Co.*, 186 F. 2d 956, 960-61 (4th Cir. 1950) (When the determining factor is mailing rather than receipt of a notice, evidence of mailing is not rebutted merely by evidence that the notice was not actually received). *Herndon v. Massachusetts Gen. Life Ins. Co.*, 28 F. Supp. 2d 379, 384 (W. D. Va. 1998). ("[T]he policy requires only that notice be mailed by [defendant]. Virginia courts have consistently upheld policy provisions that require only mailing of notice as opposed to receipt, holding that the insured has contracted for and assumed the risk of non-receipt."). *See*, Appleman on Insurance 2d §§ 40.13 - 40.14 (2nd ed. 2005). Annot., "Actual Receipt of Cancellation Notice Mailed by Insurer as Prerequisite to Cancellation of Insurance," 40 A.L.R. 4th 867, § 4(a) (1985).

2.  **Plaintiff David Shrair Does Not Dispute That He Had Actual Knowledge That the Policy Was in Danger of Lapsing and That a Premium Payment Was Needed.**

Application of the foregoing rule is most appropriate here in light of the undisputed fact that David Shrair, as well as Mortimer Polep and his insurance adviser and financial adviser, all had *actual* knowledge that a premium was due. This is not the unfortunate case where an annual premium notice, sent once a year, is lost in the mail and the insured, without having received his annual reminder, neglects to pay the

premium and the policy lapses. Quite to the contrary, here there were two experienced insurance agents studying the situation, one of whom received full and accurate information about the policy premiums directly from Reassure months prior to the time the premium payment was due, and an experienced attorney receiving the same information, but failing to take action to preserve the policy. Mr. Shrair admits that he received the June 17, 2004 notice that the policy was in danger of lapsing, Shrair Dep. at 53, and it is undisputed that he received James Aronson's letter dated July 24, 2004 and transmitted it to Mr. Polep on August 26, 2004. Statement of Undisputed Facts and Plfs.' Response, no. 58. The only response that Mr. Shrair can make to the undisputed fact that he had actual notice of the potential lapse is to point to his deposition testimony where he stated that he was not aware that the Policy was under-funded and in danger of lapsing. Plfs.' Opposition Memo. at 4. However, this conclusory expression of his state of mind, made at his deposition prior to the Aronson letter of July 24, 2004 coming to light, does not create a genuine issue of fact with respect to his having actual knowledge of the potential policy lapse.

3.   **Reassure's Sending "Premium Payment Reminder Notices" is Not Relevant to the Issue Before the Court.**

At pages 3 – 4 of their Memorandum, plaintiffs argue that they were entitled to receive "Premium Payment Reminder Notices" pursuant to the "Premiums - Payment" paragraph of the policy. *See*, Shrair Dep. – Ex. 3 at 008 ("Premium payment reminder notices will be sent to the Owner upon written request."). They contend that it was improper to place a "suspend code" on the policy and not remit these notices. Barbara Cowens testified that this suspend code had been placed on the policy in 1993, when Mr. Polep had requested that all annual periodic premiums in the amount of $23,213.00, payable in June of each year, be paid from the Accumulation Value of the policy. *See*, Cowens Dep. at 32, 37-40; Ex. 15. While Reassure maintains that this action was perfectly appropriate under the circumstances, the sending of these reminder

notices is not the relevant issue before the court. As noted, these premium reminder notices were sent once a year in June and reminded the plaintiffs to pay the Planned Periodic Premium in the amount of $23,213.00. *See*, Cowens Dep. – Ex. 22. However, whether Reassure should have sent this notice or not in June, 2004 is irrelevant because plaintiffs did in fact receive the "Payment Due Notice" dated June 17, 2004 which advised them that a smaller premium payment in the amount of $6,548.55 was due. *See*, Shrair Dep. – Ex. 4E. Moreover, this "Payment Due Notice" went on to advise plaintiffs, in large block letters, as follows: "IF YOU ARE CURRENTLY PAYING THE PLANNED PERIODIC PAYMENT OF $23,213.00, IT MAY NOT BE SUFFICIENT TO KEEP YOUR COVERAGE IN FORCE." Thus, the "Payment Due Notice" that the plaintiffs actually received provided them with the equivalent information that is contained in the annual "Payment Notice" that plaintiffs claim they should have received. *Compare*, Shrair Dep. – Ex. 4A and 4E. By making a payment in response to the June 17, 2004 "Payment Due Notice," plaintiffs effectively waived any complaint concerning the annual "Payment Notice" that was not sent due to the "suspend code."

In addition, and even more to the point, is the lack of relevance concerning the failure to send an annual "Payment Notice" in June, 2004. Whether an annual reminder notice should, or should not, have been sent in June, 2004, or in any prior years, has absolutely no relevance to a payment that came due in October, 2004 and was not paid. The lapse of the policy was not due to the failure to pay the planned periodic premium of $23,213.55 in June, 2004, but rather was due to the failure to pay the $12,660.88 that was due in October, 2004. *See*, Cowens Dep. – Ex. 27. Plaintiffs may legitimately complain that they did not receive the October, 2004 payment due notice, which they certainly have done, *see*, Cowens Dep. – Ex. 29, because the failure to pay this premium resulted in the lapse of the policy. However, annual notices that should, or

should not, have been sent months or years before October, 2004 are entirely irrelevant to the issue of what caused the policy to lapse in November, 2004. *See*, Cowens Dep. – Ex. 28.

4. **There Are No Issues of Fact With Respect to Reassure's Proof That the October 18, 2004 Payment Due Notice was Mailed Correctly.**

At pages 5 and 6 of their Opposition Memorandum, plaintiffs attempt to impugn Reassure's proof concerning its business records and practices with respect to its sending notices on the policy. As noted above, the only relevant notice under consideration is the October 18, 2004 Payment Due Notice. However, Barbara Cowens, testified at her deposition concerning all of the notices and statements that Reassure sends out, and more importantly, she testified concerning the entire process that Reassure follows in mailing out notices. Plaintiffs argue in their Opposition Memorandum that "Other than Ms. Cowens' testimony, Defendant has set forth no affidavit as required by statute." The statute they are referring to is Mass. G. L. c. 175, § 110B, which Reassure discussed in its opening Memorandum at pages 14-15. Certainly, Ms. Cowens could provide a simple form of affidavit setting forth what the statute requires, i.e. that the notice required by §110B has been duly mailed by the company. However, Reassure has done much more than simply file an affidavit as specified in the statute. Reassure has presented its Vice President of Policyowner Services, Ms. Cowens, for examination, and to a large extent cross-examination, by plaintiffs' experienced trial counsel. This examination consumed approximately five hours of testimony in November, 2005. Cowens Dep. at 1 – 125. An affidavit from Ms. Cowens, as set forth in the above-referenced statute, would add nothing to the extensive information that she provided at her deposition.

In the Statement of Undisputed Material Facts and in its opening Memorandum,

Reassure highlighted the portions of Ms. Cowens' testimony that described in detail the business practices that Reassure follows in transmitting its' notices to policyowners. *See,* Statement of Undisputed Facts, pars. 33 – 42 and Reassure Memo. at 6 – 8, 10 – 11. This testimony need not be repeated here except as necessary to respond to plaintiffs' arguments in their Opposition Memorandum. At page 5, plaintiffs contend that "Ms. Cowens did not testify that the June 17, 2004 Payment Due Notice, Ex. 26, the June 17, 2004 Annual Report, Ex. 31, and the October 18, 2004 Payment Due Notice, Ex. 27, were transmitted," citing to Ms. Cowens deposition testimony at pages 98 – 101. A review of this testimony shows that this is simply not true. With respect to the June 17, 2004 Payment Due Notice (Ex. 26), Ms. Cowens testified as follows at pages 94 – 95:

> Q. What type of envelope was Exhibit No. 26 transmitted in?
> A. It would have been a double window envelope.
> Q. Do you know that for a fact?
> A. Yes.
> Q. And how do you know that for a fact?
> A. Because it has Reassure America Life in the upper left-hand corner of the letter.
> Q. That is to say; however, you've not actually seen the envelope that this went out in; is that correct?
> A. That's how we transmit notices.
> Q. Are you aware of any instance when Reassure has transmitted a payment due notice such as Exhibit No. 26 in anything other than a double window envelope in June of 2004?
> A. No.
> Q. Is it possible that the exhibit marked No. 26 was transmitted in an envelope which was addressed to anyone other than David Shrair and Anne Polep at 1380 Main Street?
> A. No.
> Q. Are you certain of that?
> A. Yes.

With respect to the Annual Report dated June 17, 2004 (Ex. 31), Ms. Cowens testified as follows at pages 97 – 99:

> Q. Was there any other documentation other than Exhibit No. 26 that was transmitted to the owner relating to payment due at such time?

    A. The annual statement would have gone out, but not a payment, this is the only payment due notice that was mailed.
    Q. All right. That was the annual statement for on about June 17, 2004; is that correct?
    A. That's correct.
    Q. Did that go out in the same envelope as Exhibit No. 26?
    A. No.
    Q. That was sent in a separate envelope; is that correct?
    A. That would have been mailed in a separate envelope.
    Q. To whom was the annual statement for June 17, 2004 transmitted?
    A. It was transmitted to David Shrair and Anne Polep, trustees at 1380 Main Street, Springfield, Massachusetts, 01103.
    Q. And for the record, you're referring to Reassure's production of documents Bates stamp No. 104; is that correct?
    A. That is correct.

(Exhibit No. 31 marked for identification.)

    Q. Ms. Cowens, would you kindly identify Exhibit No. 31?
    A. It's a policyholder statement for the period June 18, 2003 through June 17, 2004 to owner David Shrair and Anne Polep, trustees, at 1380 Main Street, Springfield, Massachusetts, 01103.
    Q. What proof, if any, does Reassure maintain that Exhibit No. 31 was sent to the address that you've just testified as to?
    A. We produce the statements, we take them to our mail center, and we mail them out. We don't have a certified or - - we don't have any type of proof like that.
    Q. Are you aware whether or not Exhibit No. 31 was transmitted?
    A. Yes, we produced the notices and mailed them.
    Q. You have no independent knowledge, however, whether or not Exhibit No. 31 went to the address designated, though, do you?

MR. ROONEY: Objection to the term independent knowledge.

    Q. Independent other than the fact that that is the standard operating procedure?
    A. That is our standard operating procedure.
    Q. Other than the fact that that is your standard operating procedure?
    A. I have - - no.
    Q. And the same would be true relative to Exhibit No. 26; isn't that correct?
    A. That's correct.

With respect to the October 18, 2004 Payment Due Notice (Ex. 27), Ms. Cowens testified as follows at pages 100-102:

    Q. Exhibit No. 27, please. Would you kindly identify Exhibit No. 27?

> A. It's a payment due notice dated October 18, 2004 to David Shrair and Anne Polep, trustees, at 1380 Main Street, Springfield, Massachusetts, 01103.
> Q. Is your testimony relative to your knowledge as to whether or not Exhibit 27 was transmitted to the address you've just testified the same as your testimony relative to Exhibits 26 and Exhibit 31?
> A. Yes.
> Q. And that is to say other than standard operating procedure, you would have no independent knowledge as to whether this document went out?
> A. Correct.
> Q. And Exhibit 27 represents what you've coined in your earlier testimony as the notice of lapse; is that correct?
> A. Correct.
>
> ….
>
> Q. What sort of envelope did Exhibit No. 27 go out in as a matter of standard operating procedure?
> A. A double window envelope.
> Q. And can you testify with any degree of specificity as to what sort of envelope this particular document went out in?
> A. A double window envelope.
> Q. Other than standard operating procedure, can you testify as such?
> A. No.
> Q. Are you aware of any complaints which were made relative to the transmittal of any notification during the period January 2004 through December 31, 2004 from Reassure to its owners and premium payors?
> A. Can you - - I'm sorry.
> Q. Certainly. Are you aware of any complaints which were made by policy owners and premium payors relative to the transmittal of all notices during the calendar year 2004?
> A. I'm aware of this complaint, and I - - other than that, no.

The fact that Ms. Cowens had no personal knowledge of three policy notices among the 300,000 policies that she administers is obviously not at all surprising. It would be surprising, if not incredible, if she, or anyone else at Reassure, did claim to have personal knowledge of these notices. Obviously, the only proof that exists with respect to these notices is derived from Reassure's business records and its usual and customary business practices that are in place with respect to sending notices. *See, Hotaling v. Chubb Sovereign Life Ins. Co.*, 241 F. 3d 572, 580-81 (7th Cir. 2001); *Federal*

*Kemper Life Assurance Co. v. Ellis*, 28 F. 3d 1033, 1040 (10th Cir. 1994); *Yessick v. Midland Life Ins. Co.*, 178 F. Supp. 2d 1301, 1302, 1304. The fact that Ms. Cowens did not have personal knowledge as to the transmission of notices is irrelevant as she was testifying as Reassure's representative pursuant to Fed. R. Civ. P. 30(b)(6). See, Fed. R. Evid. 803(6); Vol. 30B, M. Graham, Fed. Practice and Procedure: Evidence § 7047 at 553 (Interim Edition). Despite a vigorous cross-examination by plaintiffs' counsel, Ms. Cowens provided complete, consistent and accurate answers to counsel's questions. Nothing in her testimony created a genuine issue of fact with respect to Reassure's sending of notices, and plaintiffs have presented nothing that in any way contradicts her testimony.

At page 8 of their Opposition Memorandum, plaintiffs argue that "Plaintiffs reliance upon Defendant's agreement to provide Notices pursuant to the Policy sounds in Equitable Estoppel." Plaintiffs have not pled equitable estoppel in their eight count Complaint, and for this reason alone, this theory should not be considered. However, more importantly and fundamentally, Reassure's proof that the October 18, 2004 payment due notice was mailed to the plaintiffs at 1380 Main Street, Springfield, Massachusetts 01103, which Reassure submits has not been impeached on the facts, is a complete defense to this theory of recovery just as it is to all of the theories that are set

forth in plaintiffs' Complaint. *See, Federal Kemper Life Assurance Co. v. Ellis*, *supra*, 28 F. 3d at 1040-41.

                        REASSURE AMERICA LIFE
                        INSURANCE COMPANY

                        By its attorneys,

May 17, 2006              /s/ Edward S. Rooney, Jr.
                        Edward S. Rooney, Jr.
                        BBO #426840
                        ECKERT SEAMANS CHERIN
                        & MELLOTT, LLC
                        One International Place, 18th Floor
                        Boston, MA 021110
                        Phone:  617-342-6863
                        Fax:    617-342-6899

**CERTIFICATE OF SERVICE**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on 5/17/06

By: /s/ E. S. Rooney, Jr.